IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RANDOLPH MICHAEL RABBE AND LISA ANN RABBE, | |
| Plaintiffs, | 8:17-CV-131 |
| vs. | MEMORANDUM AND ORDER |
| WELLS FARGO HOME MORTGAGE, INC. AND WELLS FARGO, N.A., | |
| Defendants. | |

This matter is before the Court on the plaintiffs' motion (filing 12) for a temporary restraining order, preliminary injunction, and permanent injunction. That motion will be denied.

STANDARD OF REVIEW

When deciding whether to issue a temporary restraining order or preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural*

*Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cnty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show a greater than 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

## DISCUSSION

The Court's decision to deny the plaintiffs' motion will be based on its finding that the plaintiffs do not have any likelihood of success on the merits of their complaint. That conclusion will be easier to understand after a brief recitation of the facts as they appear, incompletely and somewhat confusingly, from the plaintiffs' filings.

At some point, apparently in 2003, Wells Fargo[1] loaned the plaintiffs $178,589. Filing 1-1 at 3-4; filing 10 at 2. The loan seems to have been secured by residential real property in Omaha, Nebraska. *See* filing 12. But, the plaintiffs allege, they discovered on July 17, 2016 that Wells Fargo had defrauded them. Filing 1-1 at 4. After that, however, the plaintiffs contend—and have presented some evidence—that as of September 19, the loan (or, at least, *a* loan) was paid off. Filing 12 at 5-8. That was apparently accomplished by two large lump sum payments, totaling $99,000, made on

---

[1] The named defendants are Wells Fargo Home Mortgage, Inc. and Wells Fargo, N.A. Filing 1-1 at 1. The distinction does not seem to be significant, at least at this point, and the Court refers to them collectively as "Wells Fargo."

September 16 and 17. Filing 12 at 7. But the plaintiffs also contend that just a few days later, they sent a number of documents to Wells Fargo purporting to effectively cancel the loan and rescind a trust deed that was, presumably, securing the indebtedness. *See* filing 12 at 11-16.

The plaintiffs filed this case on February 6, 2017. Filing 1-1 at 1. Generally summarized, the plaintiffs accuse Wells Fargo of breach of contract, fraud, racketeering, usury, and violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* Filing 1-1 at 1-7. And then, on March 30, 2017, the plaintiffs were sent a notice of default by a successor trustee to a trust deed for the property, stating that they were in default on a promissory note held by Wells Fargo, and that the property would be sold to satisfy the debt. Filing 12 at 17. The plaintiffs represent that a foreclosure auction has been scheduled for June 19. Filing 12 at 4. That is what they seek to enjoin. *See* filing 12 at 1-2.

But the primary problem is that, from a review of the plaintiffs' complaint, the Court finds no basis to conclude that the plaintiffs have any likelihood of success on the merits of their case. The complaint is not premised on any theory relating to the supposed satisfaction of their loan. Rather, the central assertion underpinning all of their theories of recovery seems to be that Wells Fargo did not lend "lawful money of the United States for the full value of the loan" because it loaned "beyond its customers' deposits" and the checks written "were not backed by or redeemable in Federal Reserve Notes, coins or lawful money of the United States for their full face value." Filing 1-1 at 3-4. The "only consideration" for the loan, the plaintiffs say, was a "book entry demand deposit" that Wells Fargo created. Filing 1-1 at 4. Wells Fargo, they allege, "merely transferred some book

entries and never intended to redeem this check in lawful money of the United States." Filing 1-1 at 4.

The Court has seen similar theories before. *See In re Anthony*, 481 B.R. 602, 617 (D. Neb. 2012). The plaintiffs' particular permutation is commonly referred to as a "vapor money" or an "unlawful money" claim, and has been uniformly rejected by every court to consider it. *See*, *Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1344-45 (N.D. Ga. 2014); *Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 721-22 (W.D. Va. 2011) (collecting cases); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212-14 (D. Conn. 2010) (collecting cases); *see also, e.g.*, *Allah-Bey v. Roberts*, 668 F. App'x 419, 420 (3d Cir. 2016); *Moser v. Citimortgage, Inc.*, No. 1:12-CV-1258, 2013 WL 4519346, at \*2 (M.D.N.C. Aug. 26, 2013) (collecting cases); *Blake v. Irwin Mortg.*, No. CV-10-2435, 2011 WL 98538, at \*2 (D. Ariz. Jan. 12, 2011) (collecting cases); *Barnes v. Citigroup Inc.*, No. 4:10-CV-620, 2010 WL 2557508, at \*2 (E.D. Mo. June 15, 2010) (collecting cases); *Lawrence v. Thornburg Mortg. Home Loans, Inc.*, No. 1:09-CV-3356, 2010 WL 11433295, at \*4 (N.D. Ga. Jan. 12, 2010), *aff'd,* 624 F. App'x 721 (11th Cir. 2015), and *aff'd,* 624 F. App'x 721 (11th Cir. 2015) (collecting cases); *Rodriguez v. Summit Lending Sols., Inc.*, No. 09-CV-773, 2009 WL 1936795, at \*2 (S.D. Cal. July 7, 2009); *Alejo v. Mozilo*, No. CV 09-680, 2009 WL 692001, at \*3 (C.D. Cal. Mar. 16, 2009); *Frances Kenny Family Trust v. World Sav. Bank FSB*, No. C 04-03724, 2005 WL 106792, at \*5 (N.D. Cal. Jan. 19, 2005) (collecting cases); *Thiel v. First Fed. Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592, 596 (N.D. Ind. 1986).

> Reasoning on the most fundamental level, a level which requires more common sense than legal acumen, plaintiffs' theory is absurd. A check issued by a mortgagee need not be "legal tender"

> for the loan to be valid. Far from suggesting any fraudulent conduct, the drafts issued by the [creditor] in this case accomplished the only conceivable purpose of the transaction: they allowed [the buyer] to buy the properties at issue. . . . Thus, while dollar bills and coins have been declared by Congress as legal tender, and so can be used to pay any debt, not all debts need be paid in legal tender if the parties agree.

*Thiel*, 646 F. Supp. at 596. Pro se litigants have, in fact, even been sanctioned for pursuing frivolous litigation premised on such reasoning. *Id.* at 596-98.

The different tack taken by the plaintiffs' motion for injunctive relief—that the loan has been paid—fares little better. To begin with, it bears no real resemblance to the claim presented in the complaint, and the Court is unconvinced that injunctive relief can be premised on what is essentially a different claim than the one presented by the pleadings. But beyond that, the record is incomplete with respect to the actual sequence of transactions leading to the alleged foreclosure. The plaintiffs have provided some documents, but not enough to explain, for instance, why they sought to cancel a loan that had supposedly been satisfied, or why they would have paid off a loan that they believed at the time, according to their own allegations, to be fraudulently issued. The documents that have been provided are just as consistent with a refinancing as with complete satisfaction of the indebtedness. Simply put, the Court is unpersuaded by the evidence that the plaintiffs' obligation to Wells Fargo, secured by the real property, has been fully discharged.

In sum, the Court finds no likelihood of success on the merits of the plaintiffs' claims and, without such a likelihood, injunctive relief is unwarranted. Accordingly,

IT IS ORDERED that the plaintiffs' motion (filing 12) for a temporary restraining order, preliminary injunction, and permanent injunction is denied.

Dated this 9th day of June, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge