IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RANDOLPH MICHAEL RABBE AND LISA ANN RABBE, | |
| Plaintiffs, | 8:17-CV-131 |
| vs. | MEMORANDUM AND ORDER |
| WELLS FARGO HOME MORTGAGE, INC. AND WELLS FARGO, N.A., | |
| Defendants. | |

This matter is before the Court on several filings, but two in particular: the defendants' motion for judgment on the pleadings (filing 14) and the plaintiffs' purported amended complaint (filing 23). For the following reasons, the Court will grant the motion for judgment on the pleadings, strike the amended complaint, and dismiss this case.

BACKGROUND

The operative complaint filed by the plaintiffs, Randolph Michael Rabbe and Lisa Ann Rabbe, accuses the defendants, Wells Fargo Home Mortgage and Wells Fargo, N.A. (collectively, Wells Fargo), of defrauding them in association with a residential home loan they obtained in 2003. Filing 1-1 at 3. The Rabbes allege that on June 19, 2003, Wells Fargo loaned them $178,589.00. Filing 1-1 at 3. The loan seems to have been secured by residential real property in Omaha, Nebraska. *See* filing 12. But, the Rabbes allege, they discovered on July 17, 2016 that Wells Fargo had defrauded them. Filing 1-1 at 4. Generally summarized, the Rabbes accuse Wells Fargo

of breach of contract, fraud, racketeering, usury, and violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* Filing 1-1 at 1-7. Wells Fargo admits it loaned the Rabbes $178,589.00, and that it used the United States Postal Service to collect the debt, but otherwise denies the Rabbes' allegations. Filing 10 at 2. Wells Fargo moves for judgment on the pleadings. Filing 14.

## STANDARD OF REVIEW

As a general rule, a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). A Rule 12(c) motion requires the Court to view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Poehl*, 528 F.3d at 1096.[1]

When ruling on a motion to dismiss under Rule 12(b)(6) or 12(c), the Court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). It may, however, consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings. *Id.*

---

[1] The Rabbes suggest that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Filing 19 at 2 (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). But that standard was disapproved in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).

DISCUSSION

As noted above, there is a pending motion for judgment on the pleadings, but the Rabbes purport to have filed an amended complaint. As will be discussed below, the Court finds that amended complaint improper, and will strike it. Accordingly, the Court will first address the motion for judgment on the pleadings with reference to the Rabbes' operative initial complaint, contained in filing 1-1.

### JUDGMENT ON THE PLEADINGS

Wells Fargo's arguments are relatively straightforward: it observes that the Rabbes allege that Wells Fargo agreed to loan them $178,589.00, and that it wrote them a check for $178,589.00, thereby meeting its obligations under their agreement. Filing 14 at 4; *see* filing 1-1 at 3-4. Wells Fargo also points out that claims grounded in fraud are subject to an elevated pleading standard. Filing 14 at 6; *see* Fed. R. Civ. P. 9(b); *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).[2] Wells Fargo asserts that the Rabbes have not alleged any factual basis for their racketeering claim. Filing 14 at 6-7.[3] It

---

[2] To satisfy Rule 9(b)'s particularity requirement, the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result: in other words, the complaint must identify the "who, what, where, when, and how" of the alleged fraud. *U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 916-17 (8th Cir. 2014).

[3] To prove a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, a plaintiff must produce evidence (1) that an enterprise existed; (2) that the enterprise affected interstate or foreign commerce; (3) that the defendant associated with the enterprise; (4) that the defendant participated, directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendant participated in the

points out that the loan at issue was not subject to Nebraska's usury laws. Filing 14 at 8; *see* Neb. Rev. Stat. § 45-101.04(4). And, Wells Fargo contends, the Rabbes' TILA claim is time-barred.[4] Filing 14 at 9; *see* 15 U.S.C. §§ 1635(f) and 1640(e); *see also Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 793 (2015).

The Court agrees on each of those points. As the Court has previously observed, filing 13 at 3, the central assertion underpinning all of the Rabbes' theories of recovery seems to be that Wells Fargo did not lend "lawful money of the United States for the full value of the loan" because it loaned "beyond its customers' deposits" and the checks written "were not backed by or redeemable in Federal Reserve Notes, coins or lawful money of the United States for their full face value." Filing 1-1 at 3-4. The "only consideration" for the loan, the Rabbes say, was a "book entry demand deposit" that Wells Fargo created. Filing 1-1 at 4. Wells Fargo, they allege, "merely transferred some book entries and never intended to redeem this check in lawful money of the United States." Filing 1-1 at 4.

But as the Court previously explained, this theory is commonly referred to as a "vapor money" or an "unlawful money" claim, and has been uniformly rejected by every court to consider it. *See, Tonea v. Bank of Am., N.A.*, 6 F.

---

enterprise through a pattern of racketeering activity by committing at least two racketeering (predicate) acts. *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. Feb. 7, 2017).

[4] Wells Fargo suggests that some of the Rabbes' other claims are also barred by statutes of limitations. Filing 14. But the Rabbes allege they did not discover Wells Fargo's alleged "fraudulent activity"—which is functionally the basis for all their claims—until 2016. The Rabbes have, at least for the *pleading* stage, pled enough to support tolling the relevant statutes of limitations. *See Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 384-85 (Neb. 2007); *see also Rotella v. Wood*, 528 U.S. 549, 555-56 (2000).

Supp. 3d 1331, 1344-45 (N.D. Ga. 2014); *Gallant v. Deutsche Bank Nat. Trust Co.*, 766 F. Supp. 2d 714, 721-22 (W.D. Va. 2011) (collecting cases); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212-14 (D. Conn. 2010) (collecting cases); *see also, e.g.*, *Allah-Bey v. Roberts*, 668 F. App'x 419, 420 (3d Cir. 2016); *Moser v. Citimortgage, Inc.*, No. 1:12-CV-1258, 2013 WL 4519346, at *2 (M.D.N.C. Aug. 26, 2013) (collecting cases); *Blake v. Irwin Mortg.*, No. CV-10-2435, 2011 WL 98538, at *2 (D. Ariz. Jan. 12, 2011) (collecting cases); *Barnes v. Citigroup Inc.*, No. 4:10-CV-620, 2010 WL 2557508, at *2 (E.D. Mo. June 15, 2010) (collecting cases); *Lawrence v. Thornburg Mortg. Home Loans, Inc.*, No. 1:09-CV-3356, 2010 WL 11433295, at *4 (N.D. Ga. Jan. 12, 2010), *aff'd*, 624 F. App'x 721 (11th Cir. 2015), and *aff'd*, 624 F. App'x 721 (11th Cir. 2015) (collecting cases); *Rodriguez v. Summit Lending Sols., Inc.*, No. 09-CV-773, 2009 WL 1936795, at *2 (S.D. Cal. July 7, 2009); *Alejo v. Mozilo*, No. CV 09-680, 2009 WL 692001, at *3 (C.D. Cal. Mar. 16, 2009); *Frances Kenny Family Trust v. World Sav. Bank FSB*, No. C 04-03724, 2005 WL 106792, at *5 (N.D. Cal. Jan. 19, 2005) (collecting cases); *Thiel v. First Fed. Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592, 596 (N.D. Ind. 1986). As the *Thiel* court explained,

> Reasoning on the most fundamental level, a level which requires more common sense than legal acumen, plaintiffs' theory is absurd. A check issued by a mortgagee need not be "legal tender" for the loan to be valid. Far from suggesting any fraudulent conduct, the drafts issued by the [creditor] in this case accomplished the only conceivable purpose of the transaction: they allowed [the buyer] to buy the properties at issue. . . . Thus, while dollar bills and coins have been declared by Congress as

> legal tender, and so can be used to pay any debt, not all debts need be paid in legal tender if the parties agree.

646 F. Supp. at 596.

In other words, all of the Rabbes' claims rest on an underlying premise—Wells Fargo didn't lend "real" money—that is legally unsustainable. Their failure to allege a sufficient factual basis for any of their claims—and in particular, their breach of contract, fraud, and racketeering claims—is because there *is* no factual basis for those claims. The Court also agrees that the Rabbes' usury claim is precluded by § 45-101.04(4), because the principal amount of the alleged indebtedness well exceeded $25,000.[5] *See McCaul v. Am. Sav. Co.*, 331 N.W.2d 795, 798 (Neb. 1983). And the Court agrees that the Rabbes' TILA claim is time-barred. *See Beach v. Ocwen Federal Bank*, 523 U.S. 410, 417 (1998).

The Rabbes have filed several documents in response, some more intelligible than others. The first is a "Notice of Motion to Intervene with an Injunction" (filing 15), purporting to withdraw the Rabbes from the jurisdiction of the United States and pose a constitutional challenge to the Nebraska Revised Statutes. That filing is without merit for (at least) two reasons. First, the laws of the United States apply to all persons within its borders. *United States v. Preston*, 598 F. App'x 465, 466 (8th Cir. 2015).[6]

---

[5] Other subsections of § 45-101.04 may be applicable as well, but the evidence necessary to consider those provisions is not before the Court.

[6] Contrary to the Rabbes' implication, there is not and never was a "Nebraska Republic": the territory now composing the State of Nebraska was acquired by the United States from France in the Louisiana Purchase, and "the United States government was the only one which could impose laws upon [it], and its sovereignty over [it] was complete." *Downes v. Bidwell*, 182 U.S. 244, 268 (1901). In other words, the State of Nebraska was created by the

Second, while the Rabbes purport to challenge the validity of the entirety of the Nebraska statutes, their claims were brought pursuant to and in reliance on those laws. And a litigant who invokes the provisions of a statute is estopped from challenging its validity: he or she may not seek the benefit of it and at the same time and in the same action question its constitutionality. *Zoiman v. Landsman*, 223 N.W.2d 49, 54-55 (Neb. 1974); *see Fahey v. Mallonee*, 332 U.S. 245, 255 (1947).

That filing also contains a "Notice of Constitutional Challenge to Statute and Motion to Intervene" (filing 15 at 5-6) asserting that foreclosure on the Rabbes' property is unlawful. The document contains no legal support for the assertion that foreclosure is unlawful, and the Rabbes' reliance on the Takings Clause of the Constitution is without merit for at least two reasons. First, the Takings Clause applies to the government's taking of private property for public use, not a private party's taking of private property for private use. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). Second, even if "just compensation" was required, that would surely have been satisfied by Wells Fargo's provision of the funds used to buy the property in the first place.

Next, the Rabbes filed an "Affidavit of Specific Negative Averment State AND FEDERAL Rule Civil Procedure, Rule 9(a)" (filing 18), denying the legal existence of a long list of entities (including, for instance, "RANDOLPH RABBE," "WELLS FARGO NA," "THE STATE OF NEBRASKA," and "UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA"). Filing 18 at 2. The gist seems to be that

---

United States, and is part of the United States: there is no other form of government, "republic" or otherwise, to fall back on. The Rabbes' persistent reliance on the "1875 Nebraska Constitution" fails for these reasons, among others.

"[n]one of the above-enumerated all-capital-letter assemblages of letters exists and is solvent" and, therefore, none are parties. Filing 18 at 2-3.

This presumably relies on the mistaken belief that spelling a name with all capital letters, as opposed to using lower-case capitalization, has some legal implication. It doesn't. *See United States v. Reed*, No. 4:12-CR-373, 2013 WL 11762139, at \*4 (E.D. Mo. May 2, 2013) (collecting cases). Historically, the use of all capital letters for emphasis and in captions and for party names was practical: typewriters and typesetters had limited options for typefaces that would make portions of a writing stand out. Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 2.19 (2002). Better options are available now, *see id.*, but legal conventions are slow to change. Nonetheless, it is a matter of style, not substance. Capitalization has no legal significance whatsoever.

The next filing before the Court is the Rabbes' "Affidavit in Opposition to Defendant's Motion to Dismiss & Motion for Judgement" (filing 19). The Rabbes advance three primary contentions. The first is that they have a right to jury trial, and that the case cannot be dismissed without a jury trial. Filing 19 at 1, 5-7. That contention is without merit. It is well-established that the right to trial by jury exists only with respect to disputed issues of fact. *Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762 (8th Cir. 2003) (citing *Fidelity & Deposit Co. v. United States,* 187 U.S. 315, 319-20 (1902)); *see Vogt v. Fitzgerald,* 162 F.3d 1166 (8th Cir. 1998). Rules that prescribe the means of *making* a disputed issue of fact are not unconstitutional. *See Fidelity & Deposit Co.,* 187 U.S. at 320; *see also Souffront v. La Compagnie Des Sucreries De Porto Rico*, 217 U.S. 475, 487 (1910).

Next, engaging on the merits, the Rabbes insist that they are "NOT complaining of the theoretical 'vapor money theory' and hereby rebut[] any

statements that this theory is the basis of the Complaint." Filing 19 at 1. Repudiating the "vapor money" theory would be a good idea—but, then the Rabbes spend several pages explaining their case using what is, beyond dispute, a "vapor money" theory. Filing 19 at 2-4. And that theory remains without merit: "[i]t is nonsensical to contend that a person can 'create' money simply by promising to pay it to someone." *In re Anthony*, 481 B.R. 602, 617 (D. Neb. 2012).[7]

Finally, the Rabbes advance an argument, first made in association with their motion for temporary restraining order (filing 12), that they already paid off their loan. The Court will address this contention below, in the context of their purported amended complaint.[8]

Next, each of the Rabbes filed a so-called "Bill of Peace." Filing 20; filing 21. They bear no resemblance to the ancient "bill of peace," which at common law was a procedural device for joining a multiplicity of suits to avoid the hardship that would result from prosecuting or defending numerous actions at law. *See Am. Bankers Ins. Co. of Florida v. Booth*, 830 So. 2d 1205, 1209 (Miss. 2002). Instead, they purport to require Wells Fargo to execute affidavits of some sort to avoid a confession of unlawful action. *See* filing 21. They are, quite candidly, absurd documents, apparently assuming a privilege to impose a Catch-22 by which Wells Fargo must waive its legal

---

[7] A promissory note may be a long-term "asset" on a bank's balance sheet, but Wells Fargo still accepted one form of asset and issued the Rabbes another form of asset—meaning that Wells Fargo did assume a risk, and that the Rabbes benefitted from getting a different asset that would allow them to buy a house.

[8] The Rabbes also request, due to a family crisis, that the Court "not require anything more of the plaintiff or schedule anything," including appeals, until after August 11, 2017. Filing 19 at 7. That request will be granted, and the Court will extend the time for filing a notice of appeal pursuant to Fed. R. App. P. 4(a)(5)(A)(i).

rights against the Rabbes in order to maintain its legal rights against the Rabbes. *See* filing 21. They have no bearing on the Court's disposition of this case.

And finally, the Rabbes filed a memorandum of law "on credit loans and void contracts" (filing 22), purporting to establish that:

> 1) Defendant and privately owned banks are making loans of credit with the intended purpose of "creating" credit as "money;" 2) other financial institutions and individuals may "launder" bank credit that they receive directly or indirectly from privately owned banks; 3) this collective activity is unconstitutional, unlawful, in violation of common law, U.S. Code and the principles of equity; 4) such activity and underlying contracts have long been held void by State Courts, Federal Courts and the U.S. Supreme Court.

Filing 22 at 1. Some of that is rehashing the "vapor money" theory, and some of it is new, at least to this case. But the Court has seen it before. *See Anthony*, 481 B.R. at 617-19. The bottom line is the conclusion that modern banks are acting unlawfully when they "lend credit." *See* filing 22 at 5-6. But "national banks are obviously authorized to extend credit directly to borrowers." *Anthony*, 481 B.R. at 619; *see* 12 U.S.C. § 24.

In sum, the Rabbes' operative complaint contains no viable claim for relief, and their supplemental materials do not establish otherwise. The Court is well aware that a pro se filing is to be liberally construed, and that a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551

U.S. 89, 94 (2007). But even construed liberally, there is no claim for relief here. The Court will grant judgment on the pleadings.

### AMENDED COMPLAINT

That brings the Court to the Rabbes' purported amended complaint (filing 23). The Court will strike the amended complaint because it was not filed in compliance with court rules. Even pro se litigants must comply with court rules and directives, *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005), and pro se litigants are not excused from compliance with substantive and procedural law, *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986). Here, the Rabbes were clearly out of time to amend their complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). So, they could amend their pleading "only with the opposing party's written consent or the court's leave." Rule 15(a)(2). They have neither. Nor have they complied with this Court's local rule regarding a motion for leave to amend a pleading. *See* NECivR 15.1. So, the Court will strike the "amended complaint" on that basis.

And even if the Court was to consider whether the Rabbes should be given leave to amend their pleading, it would decline to do so. The Court recognizes that leave should be freely given "when justice so requires." Rule 15(a)(2). But futility is a valid basis for denying leave to amend. *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009). And futility is evident here.

The purported amended complaint differs from the operative complaint in only two respects. First, it adds additional defendants—specifically, opposing counsel, and the Kansas City lawyer acting as successor trustee for purposes of foreclosing on the trust deed. Filing 23 at 1, 3; *see* filing 12 at 17. But other than identifying their business addresses, the compliant makes no mention of them or what actions they are alleged to have taken that would

subject them to liability. *See* filing 23. Accordingly, the amended complaint completely fails to state a claim against the defendants it would add.

Second, the purported amended complaint adds a new claim for relief premised on the Rabbes' allegations that they actually paid their loan off, but Wells Fargo has refused to accept the payment. Filing 23 at 5, 7. That claim fails as well. The first deficiency is that the Rabbes claim to have paid the loan amount with "funds certified by the Secretary of State of New Jersey"—specifically, a "state certified bond." Filing 23 at 5, 7. But, what is that? Well, the Rabbes have helpfully attached a copy, filing 23 at 34, which suggests that the alleged "payment" was an attempt by Lisa Rabbe to draw on her "birth account." *See In re Harrison,* 390 B.R. 590, 594-95 (Bankr. N.D. Ohio 2008). But there is no such thing. *See id.* The document plainly provides that it is "not a bank check," but is rather "tender payment by assignment of claim security instrument only."[9] Filing 23 at 34. It is not clear what that is supposed to mean, but it is clear what it does *not* mean: actual payment.

The same is true of the subsequent electronic payments the Rabbes allege they made. Filing 23 at 35-36. Those purported payments, evidence of which was attached, are not represented as having been made by the Rabbes—rather, they are represented as having been made by the Bureau of the Public Debt, which *was* a U.S. government agency responsible for borrowing the money needed to operate the federal government and accounting for the resulting public debt. *See Records of the Bureau of the Public Debt*, National Archives, https://www.archives.gov/research/guide-fed-records/groups/053.html (last visited Jun. 29, 2017); *see also* Reorganization Plan No. 3 of 1940, 5 Fed. Reg. 2107, *reprinted in* 5 U.S.C. § app. at 39, *and*

---

[9] The Court may consider exhibits attached to the complaint. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

*in* 54 Stat. 1231 (1940). But the Bureau of Public Debt ceased to exist in 2012, and its functions became part of the newly created Bureau of the Fiscal Service. *See* Treas. Order 136-01 (Oct. 7, 2012). So, while the Rabbes allege that they paid their debt by electronic transfer, those transfers were apparently made, not by them, but by a U.S. government agency that had been eliminated 4 years before the payments were allegedly made—again suggesting some sort of invented reliance on a so-called "birth account." Those allegations simply don't pass muster.

To state a claim, a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. Here, the Court's judicial experience, and particularly common sense, lead the Court to find no reasonable expectation that discovery would reveal evidence to substantiate the Rabbes' claims.

Accordingly, permitting the Rabbes leave to file their amended complaint would be futile—even if they had asked for leave, which they have not. The purported "amended complaint" will be stricken.

IT IS ORDERED:

1. Wells Fargo's motion for judgment on the pleadings (filing 14) is granted.

2. The Rabbes' operative complaint (filing 1-1) is dismissed.

3. The Rabbes' purported amended complaint (filing 23) is stricken.

4. This case is closed.

5. A separate judgment will be entered.

6. Pursuant to Fed. R. App. P. 4(a)(5)(A)(i), the Rabbes may file a notice of appeal on or before August 28, 2017.

Dated this 29th day of June, 2017.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge